(62 Misc. Rep. 575.)

## In re OSBORNE.

## In re PIERCE.

(Court of General Sessions, New York County.   March, 1909.)

1. GRAND JURY (§ 36*)—ATTENDANCE OF WITNESSES.
   Where there is nothing to show that in the issuance of subpœnas to appear before the grand jury it had any other purpose than to discharge the duties devolved upon it by law, the presumption in favor of the legality and regularity of its proceedings cannot be rebutted by a dubious and repudiated construction placed by counsel, on a motion to quash the subpœnas, upon the language used by the district attorney on the oral argument as to the purpose of the investigation before the grand jury; such purpose being, if as contended, one unknown to the law and beyond the powers of a grand jury.
   [Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36.*]

2. GRAND JURY (§ 41*)—MINUTES OF PROCEEDINGS—SECRECY.
   Laws 1907, p. 1338, c. 587, § 5, requiring the district attorney to keep the original minutes of a grand jury in his custody, and providing that neither the same nor a copy thereof shall be taken from his office, does not apply where the Attorney General or a Deputy Attorney General supersedes a district attorney under the executive law.
   [Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 41.*]

3. GRAND JURY (§ 41*)—MINUTES OF PROCEEDINGS—SECRECY.
   While the minutes of a grand jury are in the possession of a Deputy Attorney General designated to supersede the district attorney, to enter his office and make a copy thereof is a trespass, and very possibly criminal.
   [Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 41.*]

4 WITNESSES (§ 5*)—PRIVILEGE.
   The constitutional privilege (Const. N. Y. art. 1, § 6; Const. U. S. Amend. 5), that no person shall be compelled to be a witness against himself belongs only to a witness who is being required to testify, and does not relieve a person of the obligation to appear in obedience to a subpœna.
   [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 5.*]

5. GRAND JURY (§ 36*)—SUBPŒNA—SUFFICIENCY.
   Code Cr. Proc. § 612, prescribing the form of a subpœna requiring attendance before a grand jury, does not require that the real name of accused shall be stated in the subpœna, but is complied with where a fictitious name is used to designate accused, if his real name is not known; and this, though the subpœna does not inform the person subpœnaed of the subject about which he will be called upon to testify.
   [Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 75–78; Dec. Dig. § 36.*]

6. GRAND JURY (§ 2*) — SUBPŒNAS — STATUTORY PROVISIONS—CONSTITUTIONALITY.
   Code Cr. Proc. § 612, prescribing the form of a subpœna requiring attendance before a grand jury, is constitutional.
   [Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 2.*]

Separate applications by James W. Osborne and Franklin Pierce for orders to quash subpœnas requiring them, respectively, to appear before the grand jury.   Motions denied.

George Gordon Battle, for applicants.
William Travers Jerome, Dist. Atty., opposed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CRAIN, J. These are applicants to quash, vacate, and set aside two alleged writs of subpœna which required James W. Osborne and Franklin Pierce, respectively, to appear before the grand jury of the county of New York, at the grand jury room in the third story of the Criminal Courts Building, on Center street, between Franklin and White streets, in the borough of Manhattan, of the city of New York, on the 26th day of March, 1909, at the hour of 2 in the afternoon of that day, as witnesses in a criminal action prosecuted by the people of the state of New York against Richard Doe and others, and which alleged writs of subpœna were dated the first Monday of March, 1909, and subscribed by William Travers Jerome, as district attorney.

The papers submitted and considered are a notice of motion, an affidavit purporting to be verified by James W. Osborne on March 26th, an affidavit purporting to be verified by George Gordon Battle on March 27th, a paper purporting to be a copy of an alleged writ of subpœna served upon James W. Osborne, commanding his appearance before the grand jury, as above stated, a paper purporting to be a copy of a letter addressed by the said Osborne to the foreman of the afternoon grand jury, and dated March 26th, a paper purporting to be a copy of the eighteenth specification in certain alleged charges heretofore preferred by certain persons against the district attorney, and a copy of the stenographic minutes of certain remarks made in court by the district attorney and Mr. Battle, on March 26th and March 29th. The papers used in support of Mr. Osborne's application were stated to have been submitted in support of Mr. Pierce's also.

Three questions are argued on these applications: First, whether the alleged subpœnas were issued under circumstances authorizing the issuance of subpœnas; second, whether the persons served with alleged subpœnas, or either of them, occupy such a relation to the subject-matter of inquiry as to render them not amenable to such process; and, third, whether the alleged subpœnas were void, either because of fatal nonconformity to the statute, or because of unconstitutionality in the law.

The first question must be answered by a consideration of the sections of the Code of Criminal Procedure defining the duties and powers of the grand jury, and the section giving authority for the issuance by a district attorney of subpœnas requiring attendance before a grand jury, on the one hand, and the purposes for which these alleged subpœnas were issued, on the other hand, as disclosed by the motion papers, which include, as stated, oral statements in court by the district attorney and by counsel for the persons served.

The grand jury is sworn "to inquire of crimes committed or triable in the county." Code Cr. Proc. § 223. Its inquiry is to be respecting all of such matters and things as shall be given it in charge. Code Cr. Proc. § 245. It is to "present" such crimes to the court. Code Cr. Proc. § 252. It is, moreover, to inquire into the case of every person imprisoned in the jail of a county on a crime charged and not indicted, into the condition and management of the public prisons of the county, and into the willful and corrupt misconduct in office of public officers of every description in the county. Code Cr. Proc. § 260. Grand jurors are "clothed by the common law with inquisitorial

powers, and of their own motion may make full investigation to see whether a crime has been committed, and, if so, who committed it. They may investigate on their own knowledge, or upon information of any kind derived from any source deemed reliable, may swear witnesses generally, and may originate charges against those believed to have violated the criminal laws." People ex rel. Livingston v. Wyatt, 186 N. Y. 383, 391, 392, 79 N. E. 330, 333, 10 L. R. A. (N. S.) 159 (opinion of the court by Vann, J.).

Section 609 of the Code of Criminal Procedure provides that:

"The district attorney of the county may issue subpœnas, subscribed by him, for witnesses within the state, in support of the prosecution or for such other witnesses as the grand jury may direct, to appear before the grand jury, upon an investigation pending before them."

It is urged that the oral statement of the district attorney shows that the proceeding in which the alleged subpœnas were issued was one for the purpose of making a record to submit to the Governor, and that this is a purpose unknown to the law, and is in contravention of the law, and beyond the powers of the grand jury. I concur in the view that such a purpose is unknown to the law, and in contravention of law, and beyond the powers of a grand jury, and that, if the grand jury was proceeding with such purpose, and no other, the motion to quash and suppress the alleged subpœnas should be granted. I am further of the opinion that certain things said by the district attorney in his first oral statement support the contention that this was his purpose in issuing the alleged subpœnas. Upon this contention, however, being made, he has disclaimed such purpose in the sense that such purpose caused the issuance of the alleged subpœnas. His interpretation of his own language must prevail. Moreover, the material inquiry in this connection is, not what was the purpose of the district attorney in causing the alleged subpœnas to be issued, but what was the nature of the inquiry which the grand jury was consciously entering upon. There is nothing to show that in the matter of these subpœnas the grand jury had any other purpose than to discharge the duties devolved upon them by law. The presumption in favor of the legality and regularity of their proceedings cannot be rebutted by a dubious and repudiated construction, placed by defendant's counsel upon certain language used by the district attorney in oral argument.

The second question depends upon whether anything before the court requires the conclusion that the purpose of the proceedings in which the alleged subpœnas were issued was the prosecution of the persons subpœnaed for a criminal offense, and, if so, whether their constitutional rights absolved them from obeying the subpœnas—that is to say, whether they had a constitutional right under such circumstances to refuse to attend as distinguished from a constitutional right to refuse to testify.

The oral argument disclosed that, upon application of the Attorney General, the district attorney of the county of New York was superseded in the discharge of his functions as district attorney, so far as related to certain charges against the American Ice Company and its officers, and that the Attorney General selected and designated James W. Osborne as a special Deputy Attorney General to conduct an in-

vestigation relating to such charges before a grand jury, and that Mr. Osborne duly qualified as a Deputy Attorney General, and assumed the duties of his office, and attended before two grand juries in the Supreme Court, conducting such investigation before each of them, and that in connection with his duties in the premises he obtained from the official stenographer of these grand juries a copy of such stenographer's minutes of the testimony taken before such juries. It appears from such oral argument, while such minutes of testimony were in Mr. Osborne's law office in New York county, a stenographer, at such time in the employ of Franklin Pierce, accompanied by an attorney named De Witt, called at the office of Mr. Osborne, in Mr. Osborne's absence, and made a copy or copies of the whole or a part of such minutes. On the oral argument it further appeared that thereafter Franklin Pierce had in his possession information obtained from the minutes so copied, and that he used such information as counsel for parties who had preferred charges against the district attorney. It further appeared upon the oral argument that Mr. Osborne, upon his return to his office on the occasion when it is said such minutes were being copied, objected to their being copied, and compelled those who were copying them to desist from doing so.

The theory of the proceeding before the grand jury appears to be that the copying of the minutes of testimony of a grand jury, or a portion of such minutes, under such circumstances, would be criminal; and, as subpœnas to attend before a grand jury can lawfully be issued in only one of two contingencies, namely, where a grand jury is making inquiry into a crime committed or triable in the county, or conducting an investigation authorized by section 261 of the Code of Criminal Procedure, it becomes important to determine what, if any, provision of law was violated in the doing of the acts alleged upon the oral argument to have been done.

Except as forbidden by law, what is testified to in a grand jury room may be disclosed. A person subpœnaed to attend as a witness before the grand jury may, upon leaving the grand jury room, state to anybody and everybody what he testified to. An attorney, attending under circumstances where he is authorized to attend before a grand jury, may, upon leaving the grand jury room, lawfully state to any one and every one what testimony was given in the grand jury room while he was there. A grand juror may not do so; for the law forbids it, except when lawfully required to do so by a court or officer. Pen. Code, § 157. A stenographer appointed to take testimony given before a grand jury, who permits any person other than the district attorney (or probably one standing in the place of the district attorney) to take a copy of testimony before a grand jury, or to read such testimony, or any part thereof, except upon the written order of a court, is guilty of a misdemeanor. Pen. Code, § 157a. The district attorney of the county is required to keep the original minutes of a grand jury in his custody; and the law provides that "neither the same, nor a copy of the same, or any portion of the same, shall be taken from the office of said district attorney, excepting as above provided," by which is meant, except upon the written order of the court duly made after hearing the district attorney. See Laws 1907, p. 1336, c. 587.

The act which the district attorney is required to do is to keep the original minutes in his custody. The particular statute which requires him to do this does not make it a misdemeanor for him to fail to do it. For a district attorney, however, to purposely surrender the custody of such minutes, except when lawfully superseded, or upon a a court order, would be to disobey the law, whereupon he would be amenable to the provisions of section 154 of the Penal Code which provides that:

"Where any duty is or shall be enjoined by law upon any public officer, or upon any person holding a public trust or employment, every willful omission to perform such duty, where no special provision shall have been made for the punishment of such delinquency, is punishable as a misdemeanor."

It was conceded upon the oral argument that there was no express provision of law which in words devolved the duty upon the Attorney General, or a Deputy Attorney General, in a case where either of such officers superseded under the executive law a district attorney, to keep in his custody minutes of a grand jury. In theory of law the supersession by the Attorney General of the district attorney lawfully relieves the district attorney of the obligation to keep these grand jury minutes in his custody. These minutes, in theory of law, came into the hands of the Attorney General, as superseding the district attorney, and, through him, into the hands of Mr. Osborne, as representing the Attorney General. In theory, while in Mr. Osborne's hands, they were in the Attorney General's hands. They were in the Attorney General's office, and not in the district attorney's office; and section 5, c. 587, p. 1338, Laws 1907, does not apply to minutes of testimony in the Attorney General's office, but only to such minutes when in the district attorney's office. There seems to be no reason why, from the standpoint of public policy, such minutes in the Attorney General's custody and office should not be kept, under the same conditions and restrictions, and subject to like penalties for improper disclosure or surrender, as such minutes would be in the district attorney's office; but the law does not so provide, and the remedy for the omission is with the Legislature, and not the courts. An act or omission cannot be declared criminal by mere inference or analogy. It must be made so by statute.

This brings me to the consideration of the question whether, by possibility, the inquiry related to a misdemeanor under section 642 of the Penal Code. The material part of that section provides that:

"A person who willfully and without authority either (1) opens or reads, or causes to be opened or read, a sealed letter, telegram, or private paper; or (2) publishes the whole or any portion of such letter, or telegram, or private paper, knowing it to have been opened or read without authority, or (3) takes a letter, telegram, or private paper, belonging to another, or a copy thereof, and publishes the whole or any portion thereof, * * * is guilty of a misdemeanor."

Whether this section is, or by possibility might be, applicable to the alleged facts as detailed upon the oral argument, depends in part upon whether a copy of grand jury minutes as made by an official stenographer, while in the possession of a Deputy Attorney General in connection with the discharge by him of official duties pertaining to such

office, can be said to be a "private paper." It depends in part upon whether a public document in its relations to a particular person may not under certain circumstances be a "private paper." The solution of this question depends, first, upon whether a Deputy Attorney General in possession of such minutes is required to keep them secret; and secondly, if he is, whether a public document, which is required to be kept secret, can for this reason be classed as a private paper. There is no law which requires a Deputy Attorney General possessed of a copy of the minutes of a grand jury to keep such minutes secret; and such official minutes in the hands of a public officer for a public purpose are not private papers, except under the circumstances and conditions hereafter mentioned.

Such minutes of testimony constitute a public paper in the sense of being public property. It is a paper produced by a public official in an official capacity at public expense and for a public purpose. In the matters at bar it appears to have been in the custody of a public official, having the right to retain it in his possession until the official purpose requiring its retention should be subserved, and with the right, during such time, to make any use of it consistent with the purpose for which he had it and not forbidden by law. He could keep it from any scrutiny or examination by outside parties militating against the accomplishment of the purpose which it was designed to serve, or against their beneficial use of it. As an ethical proposition, he might well have considered that the same public policy, which provided for making it secret if in the custody of a district attorney, required that he should equally safeguard its contents from public inspection; but this would be with him merely a matter of conscience, unless he suffered it to be put to a use involving a breach of official trust. Doubtless a public officer or other person lawfully in possession of a public document may invoke, under circumstances, the aid of the law to protect him in his exclusive possession of it; but the section of the law efficient for this purpose is not that which protects private papers, except where the taking deprives him of that possession requisite to enable him to use it beneficially for the purpose for which it is in his keeping. De Witt's act apparently was a trespass, and very conceivably criminal; and therefore the investigation is proper. It follows that, while by possibility a crime may have been committed by those who made a copy of these minutes in the office of Mr. Osborne, if such persons there were, there is nothing before the court which should lead to the conclusion that the purpose of the proceeding in which the alleged subpœnas were issued was the prosecution of the persons subpœnaed for a criminal offense.

The constitutional privilege, it may, however, be said, that no person shall be compelled in any criminal case to be a witness against himself (see Const. N. Y. art. 1, § 6; Const. U. S. Amend. 5), belongs only to witnesses who are being required to testify. It does not relieve a person from the obligation to appear in obedience to a subpœna. It would, of course, be an impropriety for a grand jury to subpœna one whom it had reason to believe had committed a crime; and indictments are from time to time vitiated by reason of the issuance of such subpœnas and testimony given thereunder.

The remaining question is whether the alleged subpœnas were void, either because of fatal nonconformity to the statute, or because of unconstitutionality in the law. Section 612 of the Code of Criminal Procedure prescribes the form for subpœnas issued by the district attorney requiring attendance before a grand jury. But for the enactment, in so many words, that such subpœnas are to be in substantially the form indicated by that section, the following words in such section, namely: "In a criminal action prosecuted by the people of the state of New York against E. F."—might have appeared inappropriate in subpœnas requiring attendance before a grand jury; that is to say, a witness subpœnaed in a criminal action, etc., is subpœnaed to appear before the grand jury "upon an investigation pending before them." Code Cr. Proc. § 609. The criminal action as such is not begun until an indictment has been found and filed.

The subpœnas in the matters at bar conformed to the provisions of section 612 of the Code of Criminal Procedure, unless it be held that that requires that the real name of the defendant shall be stated in the subpœna, and that it is not satisfied by a designation of a defendant by the use of a fictitious name. The section is complied with where a fictitious name is used to designate a defendant in a case where a defendant's real name is not known. A defendant may be indicted under a fictitious name, and, when his real name becomes known, this may be inserted in the indictment (Code Cr. Proc. § 277); and, where such discovery is only made at the trial, witnesses subpœnaed to attend the trial must of necessity be subpœnaed in a cause entitled in the fictitious name. It is plain, however, that no witness can decline to obey a subpœna upon such a ground. It is plain that, if a grand jury did not know a defendant's name at the time of making an investigation with a view to determining whether or not an indictment should be found, and it were, nevertheless, required in such case to use the accused's true name in a subpœna, they could subpœna no witnesses because of lack of such knowledge. It appears, therefore, reasonable to conclude that section 612 is satisfied, so far as a defendant's name is concerned, by the use of a fictitious name. The affidavit of Mr. Osborne shows that he was not misled by the use of the words "Richard Doe et al.," but recognized the words "Richard Doe" as representing a fictitious, and not a real, name.

It is said, however, that where the subpœna contains a fictitious name, and not the true name of a defendant, there should be words in the subpœna appropriate to inform the person subpœnaed of the subject about which he would be called to testify. There is no such statutory requirement. While the court may regulate the use of a court writ, it cannot require that the writ shall contain matter in addition to that required by statute. If injustice is done in the use of a subpœna in the form prescribed by law, the remedy, as stated in another connection, is with the Legislature, and not the courts, unless the law itself is unconstitutional. The form of subpœna in the federal courts is not prescribed by statute; and it is, therefore, appropriate that the federal courts should do by rule and decision that which in this state is done by statute, namely, prescribe the form of the writ. While the subpœnas in the case at bar were different in form from

those used in the Matter of Shaw, 169 Fed. ——, and Matter of McLoughlin, 169 Fed. ——, in the Circuit Court of the United States for the Southern District of New York (recently decided), and while the subpœnas in the matters at bar were more technically correct than those in the Matters of Shaw and McLoughlin, in that they contained a name for a defendant, albeit a fictitious name, they were no more enlightening to the persons subpœnaed than those used in the Matter of Shaw and Matter of McLoughlin; and all the reasoning of Judge Ward, as to the inequitable character of such subpœnas and the injustice of them, applies in the matters at bar. I fully concur in Judge Ward's reasoning, and would, without hesitation, decide these matters as he did those, but for the controlling effect which I give to the statutory provisions above alluded to, believing them to be constitutional and so binding upon the court.

It would be hard to imagine matters, however, where less harm could accrue to the persons subpœnaed by reason of the form of subpœna than those at bar. The parties subpœnaed have been apprised by oral argument of the nature of the inquiry and told outside the subpœnas that which justice suggests they should have been told in them. They are, moreover, lawyers of experience, versed in the criminal law, and both former public prosecutors, conversant with their legal rights, and doubtless able to protect them. They have disobeyed the subpœnas. Their attitude, however, is but a technical contempt. They have properly brought to the attention of the court at least two questions of great importance, and it is conceivable that their course may result in amendments to the law.

They are absolved if they appear before the grand jury at its afternoon session on March 31, 1909.

Ordered accordingly.